IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PSA, INC., | ) | Case No. 00-3570 (KJC) |
| a Delaware corporation, | ) | |
| and affiliates, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| ETS PAYPHONES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. Pro. No. 03-55569 (KJC) |
| | ) | |
| AT&T UNIVERSAL CARD, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF APPEAL

Citibank (South Dakota) N.A., through counsel, hereby appeals under 28 U.S.C. § 158(a) from the Memorandum Opinion and Order denying Citibank (South Dakota) N.A.'s Motion for Summary Judgment (the "Order"), entered by the Honorable Randolph Baxter, United States Bankruptcy Judge, in Adversary Proceeding No. 03-55569 on the 28th day of December, 2005 (Docket No. 49) and the Judgment entered by the Honorable Randolph Baxter, United States Bankruptcy Judge, in connection therewith in Adversary Proceeding No. 03-55569 on December 29, 2005 (Docket No. 50) (the "Judgment").

The names of the parties to the Order and Judgment appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

1

| | |
|---|---|
| **APPELLANT:** | **Citibank (South Dakota) N.A.**<br>Represented by:<br><br>David M. Fournier, Esq.<br>PEPPER HAMILTON LLP<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>Wilmington, DE. 19899-1709<br>Telephone: 302.777.6500<br><br>and<br><br>John W. McClelland<br>David A. Jermann<br>Benjamin R. Prell<br>ARMSTRONG TEASDALE LLP<br>2345 Grand Boulevard, Suite 2000<br>Kansas City, Missouri 64108-2617<br>Telephone: (816) 221-3420 |
| **APPELLEE:** | **ETS Payphones, Inc.**<br>Represented by:<br><br>Curtis J. Crowther, Esq.<br>Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391<br>Phone: 302-571-6755<br>Telephone: 302.571.6600 |

Dated: January 6, 2006
      Wilmington, DE

Respectfully submitted,

_____
PEPPER HAMILTON LLP
David M. Fournier (No. 2812)
James C. Carignan (No. 4230)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500

- and –

ARMSTRONG TEASDALE LLP
John W. McClelland  MO #32607
David A. Jermann    MO #51389
Benjamin R. Prell    MO #55654
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri 64108-2617
(816) 221-3420

*Attorneys for Citibank (South Dakota), N.A., Appellant*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | In Proceedings Under Chapter 11 |
| PSA, INC., *et al.*, | Case No.: 00-3570 |
| Debtors. | |
| ETS PAYPHONES, INC., | Adv. Proc. No. 03-55569 |
| Plaintiff, | JUDGE RANDOLPH BAXTER |
| v. | |
| AT&T UNIVERSAL CARD, | |
| Defendant. | |

## MEMORANDUM OF OPINION AND ORDER

Before the Court is Defendant AT&T Universal Card's ("Citi")[1] Motion for Summary Judgment in the above-styled adversary proceeding.

\*

The general factual background of this case is undisputed. ETS and its related entities (collectively, the "Debtors") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") on September 11, 2000. The Court confirmed the Debtors' Joint Reorganization Plan (the "Plan") on November 14, 2001. Citi was not a creditor of ETS, and was not included in the Plan.

It was later discovered that Janet Williams ("Williams"), a former ETS employee, had

---

[1] Citibank (South Dakota), N.A. ("Citi") is the issuer of the AT&T Universal Card, the named defendant in this adversary proceeding.

misappropriated ETS funds to pay personal credit card, auto insurance, and other of her personal debts, and the debts of her family members. These payments included an amount of $330,948.52 made to Citi for her personal credit card accounts.

On August 20, 2003, ETS filed the above-styled adversary proceeding against Citi, alleging that the payments made by Williams to Citi were fraudulent transfers. ETS seeks to avoid and recover the transferred funds pursuant to 11 U.S.C. §§ 549 and 550.

Only the transfers made between August 20, 2001 and December 5, 2002, totaling $247,992.96, remain in controversy.² Citi asserts that although ETS, as debtor-in-possession, has been granted the authority to continue to manage and operate its business, it remains subject to Georgia³ state laws. Since Citi did not have a duty to inquire into the source of an individual customer's payments, Citi claims that ETS would not be able to recover under state law. Citi argues that it would be contrary to the policy of the Code to permit ETS to recover funds to which it would not be entitled during the operation of its business outside of bankruptcy. Further, Citi alleges that ETS has a duty under 28 U.S.C. § 959 to act in the ordinary course of business, pursuant to state law. Therefore, Citi argues that § 549 cannot operate to shield ETS from the effects of the negligent behavior which allegedly permitted Williams' criminal behavior to occur.

ETS replies that the plain language of §§ 549 and 550 unambiguously encompass the

---

² The parties have stipulated that transfers made before August 20, 2001 are barred from recovery by § 549(d) because they occurred more than two years before the commencement of the adversary proceeding. The parties have also stipulated that transfers made after December 5, 2002 are not recoverable because they occurred after the effective date of the Debtors' plan.

³ Citi argues that Georgia law controls, since it was the location of the alleged embezzlement activities, the ETS funds in question. This is undisputed by ETS.

remaining transfers, and that Georgia state law cannot be used to contradict the policy or language of the Code.

\*\*

Summary judgment is appropriate if a review of the record, in a light most favorable to the non-moving party, demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Maple Properties, Inc. v. Township of Upper Providence*, 2005 WL 2641113, \*3 (3rd Cir. 2005). *See generally Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970). "Facts that could alter the outcome are 'material' ... and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir. 1995) (internal citations omitted). "Merely establishing the absence of genuinely disputed facts will not carry the day for the summary judgment movant. The movant must also demonstrate that the applicable controlling law requires a decision in the movant's favor." 11 MOORE'S FEDERAL PRACTICE § 56.11[8]; *Celotex*, 477 U.S. at 322; *Dworman v. Mayor and Bd. of Aldermen, Governing Body of Town of Morristown*, 370 F.Supp. 1056, 1065-66 (D. N.J. 1974) (citing *Bushie v. Stenocord Corp.*, 460 F.2d 116, 119 (9th Cir. 1972)) ("[t]he showing of a genuine issue for trial is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion ... to a judgment as a matter of law.").

3

Once the moving party has met this initial burden of proof, the non-moving party must present specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that would be admissible in evidence, establishing the existence of a genuine issue of material fact for trial. *See Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) ("Rule 56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions"); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge would be insufficient to avoid summary judgment") (citations omitted); *Tripoli Co. v. Wella Corp.*, 425 F.2d 932, 935 (3d Cir.1970) (holding that to defeat a summary judgment motion, "a party must now come forward with affidavits setting forth specific facts showing that there is a genuine issue for trial"). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Therefore, Citi is entitled to summary judgment if there is no genuine issue of material fact, and if ETS' complaint to avoid and recover transfers fails as a matter of law.

\*\*\*

Section 549 provides the Trustee (or debtor in possession) with the authority to avoid a transfer of property of the estate that is not authorized by the Bankruptcy court or the Code. Section 549(a) provides:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate
> (1) that occurs after the commencement of the case; and
> (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
> (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). To the extent a transfer is avoidable under § 549(a), § 550(a) provides that the debtor in possession may recover the property transferred or its value from the initial transferee or from any subsequent transferee. 11 U.S.C. § 550(a).

"The purpose of section 549 is to allow the trustee to avoid those postpetition transfers which deplete the estate while providing limited protection to transferees who deal with the debtor. Fraud by the debtor and, except with respect to purchasers of real property, good faith on the part of the transferee are irrelevant to the application of this section." 5 COLLIER ON BANKRUPTCY ¶ 549.02 (15th ed. rev. 2005). "Section 549 is geared to protecting the estate against unauthorized, post-petition transfers by the debtor or by creditors seizing property in order to perfect their liens." *In re Taft*, 262 B.R. 55, 60 (Bankr. M.D. Pa. 2001); *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1081 (9th Cir. 2003) ("The purpose of section 549, in contrast, is to provide a just resolution when the debtor himself initiates an unauthorized postpetition transfer.").

The debtor in possession bears the burden of proving what may properly be recovered under § 549 and 550. *In re Rochez Bros., Inc.*, 326 B.R. 579, 588 (Bankr. W.D. Pa. 2005). To satisfy the elements of § 549(a), the debtor in possession must demonstrate that,

  1) after the commencement of the bankruptcy case in question,
  2) property of the estate
  3) was transferred, and
  4) the transfer was not authorized by the Bankruptcy Court or by a provision of
  the Bankruptcy Code.

*E.g., In re Blair*, 330 B.R. 206, 213 (Bankr. N.D. Ill. 2005); *In re APF Co.*, 274 B.R. 408, 418 (Bankr. D. Del. 2001); *In re Dartco, Inc.*, 197 B.R. 860, 865 (Bankr. D. Minn. 1996). In this case, it is clear that ETS has satisfied the requirements of § 549, since the transfers in dispute were made post-petition, involved property of the estate, were transferred to Citi, and were unauthorized by the Bankruptcy Court or the Bankruptcy Code.

  The trustee's powers under § 549 are subject only to certain enumerated exceptions. *In re Ward*, 837 F.2d 124, 127 (3d Cir. 1988) ("We are guided in its resolution by the fact that subsection 549(a) states a general rule favoring the trustee's power of avoidance, to which subsections (b) and (c) create ... very narrow exceptions."); *In re Shelton*, 331 B.R. 700, 702-03 (Bankr. W.D. Ky. 2005) ("Thus, Section 549 of the Bankruptcy Code serves as a powerful tool to assist a trustee in upholding the all-important duty of orderly and efficient liquidation of a debtor's assets for the benefit of all creditors. It expressly enables the trustee to avoid unauthorized post-petition transfers of estate property with very limited exceptions."); *In re Ford* 296 B.R. 537, 549 (Bankr. N.D. Ga. 2003) ("Section 549(a) establishes the general rule that the trustee may avoid such transfers to protect creditors, subject to the protections in § 549(c) for certain innocent purchasers."). Section 549(b) applies only to involuntary cases. Section 549(c) bars the trustee from avoiding a transfer of real property to a good faith purchaser. Neither exception is relevant in this case.

  There is no similar protection to an initial transferee who takes personal property in good

faith. *In re Williams*, 104 B.R. 296, 298 (Bankr. C.D. Cal. 1989) (citing 4 COLLIER ON BANKRUPTCY ¶ 549.03[3] at 549-12) ("No protection is provided for a good faith purchaser of personalty other than under section 549(b).").

> Considering the principals of statutory construction, if Congress intended for a good faith recipient of the debtor's personal property to be protected from the avoidance powers, then Congress would have enacted a provision to do so. Section 549(c), for example, protects good faith purchasers of real property who make their purchase without knowledge of the debtor's bankruptcy filing. By providing protection specifically for transferees of real property, Congress intentionally chose not to provide the same protections to transferees of personal property. . . .
>
> Several other provisions of the Bankruptcy Code provide protection for good faith parties without knowledge. For example:
>
> > § 549(b) protects transferees for value in the gap between the filing of an involuntary petition and the order for relief.
> >
> > § 550(b) covers immediate and mediate transferees from the initial transferee
> >
> > § 542(c) protects good faith transferors
>
> Congress, obviously, recognizes that good faith parties without knowledge deserve special consideration in some circumstances. Congress chose those circumstances. By implication, if Congress failed to provide protection for certain good faith transferees it did so intentionally. Since Congress chose to protect only good faith transferees of real property under § 549(c) and failed to mention good faith transferees of personal property, it must have intended that postpetition transfers of personal property be avoidable regardless of the knowledge or good faith of the transferee.

*In re Cybridge Corp.*, 304 B.R. 681, 687 (Bankr. D. N.J. 2004); *see also In re Cole*, 226 B.R. 647, 653-54 (B.A.P. 9th Cir. 1998) (citing *Hohn v. United States*, 524 U.S. 236, 250 (1998)) ("Where Congress has failed to include language in statutes, it is presumed to be intentional when it has used such language elsewhere in the Code."); *In re Dibiase*, 270 B.R. 673, 688 n.24 (Bankr. W.D. Tex. 2001) (quoting *United States v. Smith*, 499 U.S. 160, 167 (1991)). ("Where

7

Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent").

Section 550(a) provides that:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 549 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
>
>> (1)-- the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>>
>> (2)-- any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

There has been no assertion that Citi was a immediate or mediate transferee protected by § 550(b). Even if Williams was argued to be the initial transferee, making Citi the immediate transferee, Citi would have the burden to show that it 1) took for value, 2) in good faith, and 3) without knowledge of the validity of the transfer. *In re Nordic Village*, 915 F.2d 1049, 1055 (6th Cir. 1990), *rev'd on other grounds*, 503 U.S. 30 (1992). Citi has not provided any evidence to meet this burden. *Id.*

Citi has not shown that it falls within an enumerated exception to § 549 or § 550. Therefore, ETS may recover the funds transferred by Williams to Citi.

\*\*\*\*

Citi argues that pursuant to 28 U.S.C. § 959(b), state law prevents ETS' ability to recover the transferred funds. In Chapter 11, the ability of the debtor in possession to continue operations is limited by § 959(b), which provides that,

> (b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a

8

  debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager *according to the requirements of the valid laws of the State* in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b) (emphasis added). "Under 28 U.S.C. § 959(b), a debtor in possession or an operating trustee in a case under the Code must comply with all applicable state laws that regulate any aspect of 'carrying on' a business. In this fundamental respect, federal bankruptcy law offers the estate representative no relief or exemption from state regulatory law . . .." 1 COLLIER ON BANKRUPTCY ¶ 10.03 (15th ed. rev. 2005).

  "Implicit in Section 959(b) is the notion that the goals of the federal bankruptcy laws, including rehabilitation of the debtor, do not authorize transgression of state laws setting requirements for the operation of the business even if the continued operation of the business would be thwarted by applying state laws." *In re Quanta Resources Corp.*, 739 F.2d 912, 919 (3d Cir. 1984); *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 505 (1986) ("Title 28 U.S.C. § 959(b) provides additional evidence that Congress did not intend for the Bankruptcy Code to pre-empt all state laws."); *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 592 (9th Cir. 1993) ("It is beyond question that § 959(b) requires a trustee to manage a business in accordance with state law, as any other person must."); *In re Trans World Airlines, Inc.*, 275 B.R. 712, 722 (Bankr. D. Del. 2002) ("A debtor which continues to operate post-petition is obligated to do so in accordance with its other legal obligations. To fail to do so may subject the debtor to suit.").

  There is no question that ETS, as a debtor in possession, must comply with the requirements imposed on any business, inside or outside bankruptcy.

  The purpose of bankruptcy is not to permit debtors or nondebtors to wrest

9

> competitive advantage by exempting themselves from the myriad of laws that regulate business. Bankruptcy does not grant the debtor a license to eliminate the marginal cost generated by compliance with valid state laws that constrain nonbankrupt competitors. The Congress has thus required that every debtor in possession and bankruptcy trustee manage and operate the debtor's property and business in compliance with state laws--good, bad, and indifferent--that apply outside of bankruptcy.

*E.g., In re White Crane Trading Co., Inc.*, 170 B.R. 694, 702 (Bankr. E.D. Cal. 1994) (footnote omitted). Section 959(b) merely "makes explicit the uncontroversial idea that a debtor in possession must continue its operations in conformity with state law." *Hillis*, 997 F.2d at 593. Certainly, a debtor in possession is not excused from obeying applicable state laws or complying with state regulatory requirements. Consistent with this principle, cases involving § 959(b), including those cited by Citi, have focused on the *debtor's* obedience with state regulatory law. *See e.g., Hillis*, 997 F.2d at 593 (citing numerous cases holding under § 959(b) that a trustee must pay state taxes, comply with environmental law, comply with housing code, etc.); *In re Toledano*, 299 B.R. 284, 293 (Bankr. S.D.N.Y. 2003) (quoting *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 589 (6th Cir.1990)) ("Section 959(b) reflects the general bankruptcy policy that fostering the rehabilitation of debtors will not 'serve to preempt otherwise applicable state laws dealing with public safety and welfare.'"); 1 COLLIER ON BANKRUPTCY ¶ 10.04 (15th ed. rev. 2005) (examining case law applying § 959(b) to various regulatory fields, including health care, local housing codes, going out-of-business sales, corporate governance, and environmental law).

Herein, Citi misapplies the import of § 959(b). Section 959(b) does not stand for the proposition advanced by Citi, that the state law protections provided by the state of Georgia can be used to negate ETS' avoiding powers under § 549 and § 550 of the Code. The requirement

that the debtor in possession continue to operate *according to* state law requirements imposed on the debtor in possession (i.e., § 959(b)) does not imply that its powers under the Code are *subject to* the state law protections provided to the creditor. Citi has not alleged that ETS violated any state laws in its operation as a debtor in possession. Nor is there a concession by ETS that it has committed such an offense. Therefore, Citi has not shown that § 959(b) prevents ETS from avoiding the transfers from Williams to Citi.

Citi argues that the "mere circumstance of ETS' status as debtor in possession" should not be used to enable ETS to recover funds that it would not be able to recover outside of bankruptcy. Citi's arguments on this point are misguided. As discussed above, a debtor in possession must operate its business in compliance with state law. It is also clear that the filing of a bankruptcy petition does not permit a debtor in possession to enjoy greater contract or property rights than it possessed outside of bankruptcy case. *E.g., In re Gull Air, Inc.*, 890 F.2d 1255, 1261 (1st Cir. 1989) ("The Bankruptcy Code does not create or enhance property rights of a debtor."); *Valley Forge Plaza Assocs. v. Schwartz*, 114 B.R. 60, 62 (E.D. Pa. 1990) ("A debtor in bankruptcy has no greater rights or powers under a contract than the debtor would have outside of bankruptcy"); *In re Island Helicopters, Inc.*, 211 B.R. 453, 464 (Bankr. E.D.N.Y. 1997) ("The filing of a bankruptcy petition does not expand the debtor's rights against others more than they exist at the commencement of the case"). In this case, however, ETS has not violated a state law, and is not otherwise attempting to enhance its rights. It is merely attempting to invoke a protection provided to debtors in possession under the Bankruptcy Code.

The Code necessarily provides debtors with protections that are not available to non-bankrupt debtors, the most basic protection being the discharge of debts that would otherwise be

11

owed outside of bankruptcy. *See e.g., In re Howell*, 311 B.R. 173, 177 (Bankr. D. N.J., 2004) ("This is in part because the Bankruptcy Code gives a trustee certain rights which do not exist outside of bankruptcy."); *In re Henson*, 289 B.R. 741, 754 (Bankr. N.D. Cal. 2003) ("Finally, a Chapter 7 Trustee could apply § 547 and § 549 to avoid, respectively, any pre-petition preferential transfers and unauthorized post-petition transfers, which remedies are provided by the Code but not available to creditors outside of bankruptcy."). Sections 549 and 550 provide a debtor in possession with the ability to avoid and recover for certain transfers. Therefore, ETS' status as debtor in possession is not a mere circumstance, but is a necessary prerequisite to allow it to enjoy the protection provided by these sections. Congress has created exceptions to protect certain third parties under these sections. *See In re Cross*, 255 B.R. 25, 32-33 (Bankr. N.D. Ind. 2000) ("One may wish to argue about how Congress has resolved the tension between the competing interests of debtors and creditors, the balance it has struck, and how the consequences of bankruptcy have been allocated between them. Nonetheless, it was Congress's right to make those decisions and the states cannot change the balance that Congress has struck."). As discussed above, Citi does not fall under either of these exceptions.

Finally, Citi argues that general principles of equity should not permit ETS from recovering funds that were transferred as a result of ETS' own negligence in supervising its own employees.[4] Citi provides no evidence that would support a reasonable inference that these allegations are true. *In re Allegheny Health, Educ. and Research Foundation*, 321 B.R. 776, 791 (Bankr. W.D. Pa. 2005) (citing *Elwell v. PP & L, Inc.*, 2002 WL 31160109 at *4 (3rd Cir.2002))

---

[4] Citi also raises ETS' negligent failure to supervise Williams as a counterclaim. Citi's Answer to Complaint, at ¶ 39.

("However, ... [a court] may only consider reasonable inferences; ... [it] may not improperly consider those inferences that are unreasonable."). Therefore, Citi has not raised a genuine issue of material fact as to its allegations that ETS was negligent in its supervision of Williams. *Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir. 1993) ("[W]here the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the ... court should deny summary judgment even if no opposing evidentiary matter is presented."); *Schaps v. Bally's Park Place, Inc.*, 58 B.R. 581, 582 (E.D. Pa. 1986) ("On a motion for summary judgment it is the movant's burden to demonstrate that the facts which would warrant a summary judgment in its favor are indisputable. The opposing party is given the benefit of any favorable inferences.").

Citi, by asserting its own state law rights, cannot use § 959(b) to thwart ETS' ability to avoid the transfers pursuant to § 549 and § 550 as the debtor in possession. Citi has not met its burden of showing that, pursuant to FED. R. CIV. P. 56(c), it is entitled to judgment as a matter of law.

\* \* \* \* \*

Accordingly, the Motion for Summary Judgment is hereby DENIED. This action will proceed to trial. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

Dated, this 28 day of December, 2005

JUDGE RANDOLPH BAXTER
UNITED STATES BANKRUPTCY COURT

13

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:

PSA, INC., *et al.*,

    Debtors.

In Proceedings Under Chapter 11

Case No.: 00-3570

---

ETS PAYPHONES, INC.,

    Plaintiff,

v.

AT&T UNIVERSAL CARD,

    Defendant.

Adv. Proc. No. 03-55569

JUDGE RANDOLPH BAXTER

### JUDGMENT

In Delaware, in said District, on this 28th day of December, 2005.

A Memorandum Of Opinion And Order having been rendered by this Court in this matter.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Movant's motion for summary judgment is hereby denied. This action will proceed to trial. Each party is to bear its respective costs.

IT IS SO ORDERED.

                                                RANDOLPH BAXTER
                                                JUDGE
                                                UNITED STATES BANKRUPTCY COURT

TRANSMITTAL SHEET FOR APPEAL SUBMITTED TO U.S. DISTRICT COURT

| | |
|---|---|
| Bankruptcy Case Number: | 00-3570 |
| Adversary Proceeding Number: | 03-55569 |
| Deputy Clerk Transferring Case: | Margaret A. Stansbury (302-252-2900 Ext. 5120) |
| Case Type: | Notice of Appeal |

**Order, Date Entered and Issues**
Memorandum Opinion and Order Denying Motion for Summary Judgment entered on 12/28/05 (D.I. 49) and the Judgment entered in connection therewith entered on 12/28/05 (D.I. 50);
**Notice of Appeal is attached.** (Appeal No. AP-06-2)
**Appellee Designations not filed.**

**Debtor:**         PSA, Inc.

**Counsel:**        Curtis J. Crowther, Esq.
                    Brendan Linehan Shannon, Esq.
                    Young Conaway Stargatt & Taylor LLP
                    The Brandywine Building
                    1000 North West Street, 17th Floor
                    P.O. Box 391
                    Wilmington, DE 19899-0391
                    Telephone: (302) 571-6600

**Appellant:**      **Citibank (South Dakota) N.A., card issuer and servicer for AT&T Universal Card**

**Counsel:**        David M. Fournier, Esq.
                    James C. Carignan, Esq.
                    Pepper Hamilton LLP
                    Hercules Plaza, Suite 5100
                    1313 N. Market Street
                    P.O. Box 1709
                    Wilmington, DE 19899-1709
                    Telephone: (302) 777-6500

                    and

                    John W. McClelland, Esq.
                    David A. Jermann, Esq.
                    Benjamin R. Prell, Esq.
                    Armstrong Teasdale LLP
                    2345 Grand Boulevard, Suite 2000
                    Kansas City, MO 64108-2617
                    Telephone: (816) 221-3420

| | |
|---|---|
| **Appellee:** | **ETS Payphones, Inc.** |
| **Counsel:** | Curtis J. Crowther, Esq. |
| | Kenneth J. Enos, Esq. |
| | Young Conaway Stargatt & Taylor LLP |
| | The Brandywine Building |
| | 1000 West Street, 17th Floor |
| | P.O. Box 391 |
| | Wilmington, DE 19899-0391 |
| | Telephone: (302) 571-6600 |